UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICHARD E. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:16-cv-01426-LJM-DML |
| ) | |
| NANCY A. BERRYHILL Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

# ENTRY ON JUDICIAL REVIEW

Plaintiff Richard E. Jones requests judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (the "Commissioner"), who denied Jones' applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416, 423, & 1382c.

## I. BACKGROUND[1]

On June 22, 2012, Jones filed an application for a period of disability and disability insurance benefits as well as for supplemental security income. He alleges disability beginning June 9, 2012, due to multiple orthopedic injuries sustained in a motor cycle accident, traumatic brain injury with cognitive disorder, depression, anxiety, and

---

[1] The parties do not dispute Jones' relevant medical or opinion evidence cited by the Administrative Law Judge ("ALJ") in his Notice of Decision, which is hereby incorporated by reference. Dkt. 23. The Court will reference only those facts necessary to address the parties' arguments in its Discussion.

personality disorder. After denials at the initial and reconsideration levels, Jones filed a request for a hearing before an ALJ.

A video hearing was held on January 15, 2015, before ALJ William E. Sampson who presided from Valparaiso, Indiana. Jones appeared in Lafayette, Indiana, and was represented by Ashley Marks, an attorney. Thomas Grzesik, a vocational expert, also appeared. On August 12, 2015, the ALJ issued a decision denying Jones benefits. On April 11, 2016, the Appeals Council upheld the ALJ's decision and denied the request for review. This action for judicial review ensued.

## II. **STANDARD**

To be eligible for DIB or SSI,[2] a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A). To determine whether or not a claimant is disabled, the ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

I.  If the claimant is employed in substantial gainful activity, the claimant is not disabled.

II. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

III. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1505 *et seq.* The SSI regulations are substantially identical to the DIB regulations and are set forth at 20 C.F.R. § 416.901 *et seq.* For convenience, only the DIB regulations are set forth herein.

2

> duration requirement, the claimant is disabled.

> IV. If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

> V. If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps, but then it shifts to the Commissioner at the fifth step. *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become findings of the Commissioner. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Craft*, 539 F.3d at 673; *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Craft*, 539 F.3d at 673 (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Nelson*, 131 F.3d at 1234.

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v.*

*Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). *See also*, *Craft*, 539 F.3d at 673. Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). *See also*, *Craft*, 539 F.3d at 673 (stating that not all evidence needs to be mentioned, but the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion" (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004))). An ALJ's articulation of his analysis enables the Court to "assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review." *Craft*, 539 F.3d at 673.

### III. <u>ANALYSIS</u>

The ALJ found that Jones had a residual functional capacity that enabled him to perform a limited range of light work with certain mental and non-exertional limitations. Dkt. 23 at 13-27. Following the testimony from the vocational expert, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, including small products assembler, electronics worker, and production assembler. Dkt. 23 at 26.

Jones raises three issues with the ALJ's decision to deny him benefits. Dkt. 24 at 3. First, he claims that the ALJ did not properly address his limitations in concentration, persistence or pace, or memory deficits, when he posed hypothetical questions to the vocational expert or in the adopted residual functional capacity, despite finding Jones moderately limited in this area. Second, Jones argues that the ALJ failed to properly analyze evidence with respect to whether his medical condition met or equaled a listing.

4

Finally, Jones disagrees with the ALJ's assessment of his credibility and the ALJ's alleged disregard of his subjective symptoms in making that determination.

## A. RESIDUAL FUNCTIONAL CAPACITY

The ALJ found that Jones is "moderately limited in the ability to maintain concentration, persistence or pace, consistent with the State agency psychological consultant's opinions." Dkt. 23 at 19. The ALJ concluded that Jones has the residual functional capacity to perform light work, but "cannot climb ladders, ropes or scaffolds, and no more than occasionally climb ramps, stairs, balance, stoop, kneel, crouch, or crawl." Dkt. 23 at 20. He also found that Jones can "frequently but not constantly use his hand for handling and fingering. He is limited to simple, routine, repetitive tasks, and occasional interaction with co-workers and supervisors, and no interaction with the public." Dkt. 23 at 20.

The ALJ questioned the vocational expert about the jobs available in the national economy given Jones' residual functional capacity. Dkt. 18-17 at 35. The vocational expert testified that Jones would not be able to perform his past work, but that he could perform light and unskilled jobs, including small product assembler, electronic worker, and production assembler. Dkt. 18-17 at 35-37. The ALJ posed two other hypotheticals to the vocational expert, but neither related to concentration, persistence, or pace. Dkt. 18-17 at 37.

Jones claims that the ALJ's determination of his residual functional capacity fails to consider the ALJ's earlier finding that Jones was moderately limited in maintaining concentration, persistence, or pace. Dkt. 23 at 19. Jones also argues that the ALJ failed to question the vocational expert as to these deficiencies and also fails to explain "how

simple, routine, repetitive tasks accommodate observed deficits in concentration and memory." Dkt. 24 at 13-14. In support, Jones cites consultative examiner Dr. Ryan Oetting's opinion that Jones "would seem to currently have difficulty persisting in full time employment that required him to retain multi-step instructions and/or be physically active." Dkt. 18-5 at 76.

The court has repeatedly rejected the notion that "confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitation in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014). The ALJ did, however, account for this limitation by crediting the State agency psychological consultants. The ALJ stated:

> Turning to the opinion evidence, the State agency psychological consultants opined that the claimant could perform unskilled work, which accounts for the problems with the claimant's concentration and memory [citing consultants' reports]. The undersigned gives great weight to the State agency opinions, and concludes that the claimant could perform unskilled work that is simple, routine and repetitive. Dkt. 23 at 25.

State agency consultants are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). Both state agency experts concluded that Jones exhibited adequate concentration, persistence, and pace as well as social ability to handle the mental demands of "unskilled work." Dkt. 18-5 at 59. *See also* dkt. 18-6 at 18. The ALJ relied on the opinions of the State agency psychological consultants to conclude that, despite his moderate limitations in maintaining concentration, persistence, or pace, Jones was nonetheless capable of performing unskilled work that is simple, routine, and repetitive. Dkt. 23 at 25.

6

Moreover, the ALJ specifically referred to Dr. Oetting's report in making his finding as to Jones' residual functional capacity. Dkt. 23 at 25. Specifically, Dr. Oetting concluded that Jones would have difficulty in maintaining full-time employment that required retention of multi-step instructions due to his deficits in concentration and memory. Dkt. 23 at 25. This opinion supported the ALJ's position that Jones would be suited to simple, routine, repetitive tasks. Dkt. 23 at 25. Thus, unlike Jones' assertion to the contrary, the ALJ reviewed the opinions of the medical experts as well as the medical evidence to provide an explanation as to how he found that simple, routine, and repetitive tasks accommodated Jones' observed deficits in concentration and memory; the ALJ then used these limitations to question the vocational expert.[3] Dkt. 24 at 14. *Cf. Yurt* 785 F.3d at 858-59 ("Although it is not necessary that the ALJ use this precise terminology ('concentration, persistence, or pace'), we will not assume that the [vocational expert] is apprised of such limitations unless she has independently reviewed the medical record. There is no evidence here that the [vocational expert] reviewed Yurt's medical history or heard testimony about the various medical limitations that he complains were omitted from the ALJ's hypothetical.").

---

[3] Jones also makes the perfunctory argument that "[f]urther, the ALJ found Jones able to perform work such as a small product assembler, electronics worker, and production assembler despite crediting the doctor who found he would not be able to perform multi-step tasks." Dkt. 24 at 14. Jones provides no analysis or support from the record that would establish that these occupations would require multi-step tasks or be affected by his deficiencies in concentration, persistence, or pace. The Court will not do so for him and said argument is deemed waived. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived….").

## B. LISTINGS

At step three, the ALJ found that the medical evidence does not document Listing level severity and that no acceptable medical source mentioned finding equivalent severity to the criteria of any listed impairment. Dkt. 23 at 18. Specifically, given Jones' medical history, the ALJ considered Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine). Dkt. 23 at 18.

Jones claims that the ALJ failed to consider all methods of ineffective ambulation with respect to each Listing. Dkt. 24 at 17. He also argues that the ALJ erred in not obtaining an independent medical opinion as to whether Jones' impairments possibly equaled a Listing. Dkt. 24 at 17.

An applicant "must satisfy all of the criteria in the Listing in order to receive an award of disability insurance benefits and supplemental security income under step three." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). It is the claimant's burden to establish that he met all requirements of a listed impairment. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

At the ALJ hearing, Jones' counsel, who also represents him in this appeal, stated that "there are no listings [that] I think are necessarily appropriate in this case…." Dkt. 18-17 at 11. A claimant "represented by counsel is presumed to have made his best case before the ALJ." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). Thus, Jones failed in meeting his burden of establishing a pertinent Listing at the outset.

Despite this admission by his counsel at the hearing, Jones now claims that the ALJ failed to consider the examples set forth in Listing 1.00(B)(2)(b)(2) to determine whether he could adequately ambulate. Dkt. 24 at 17. Jones does not cite to any

evidence of record to support this theory or to any alleged impairments that the ALJ failed to consider. See dkt. 24 at 17-20. Jones merely cites to vague legal principles that do not in any way relate to the analysis of his case.[4] The burden rests on the claimant to establish that he meets a Listing and Jones' failure to tie any alleged error by the ALJ to the objective medical evidence does not satisfy that burden. See *Filus*, 694 F.3d at 868.

Nonetheless, in the interests of completeness, the ALJ in this case did, in fact, cite to evidence for its findings with respect to his ability to ambulate effectively. Ineffective ambulation is defined as an, "extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A.[5] The ALJ concluded found that "[w]ith respect to the claimant's multiple pelvic fractures secondary to the motorcycle crash, the claimant ambulated with a normal gait. He had full range of motion of the lower extremities, with full strength [citing dkt. 18-5 at 68.]." Dkt. 23 at 18. Moreover, later in the decision, the ALJ considered Jones' reports that he went camping and could prepare an elaborate meal with proper equipment, which is not consistent with ineffective ambulation. Dkt. 23 at 26. Thus, substantial evidence supports the ALJ's finding that Jones did not satisfy all of the criteria necessary to meet a Listing.

---

[4] At another point in Jones' brief wherein Jones claims that further medical testimony should have been procured by the ALJ, he states that "there are several objective findings throughout the record that require professional analysis." Dkt. 24 at 18. It is unclear whether counsel intended to pursue this line of reasoning by citing to concrete examples that required such an analysis, but what is clear is that the remaining section of this brief is lacking any citation to an objective finding that is being challenged and simply recites vague legal theories for the next two and one-half pages. Accordingly, this argument is waived.

[5] Generally, ineffective ambulation is defined as "having insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held device(s) that limits the functioning of both upper extremities." *Id*.

9

## C. SSR 96-7p FACTORS

In concluding that Jones could perform light work, the ALJ evaluated Jones' subjective symptoms in light of the medical and testimonial evidence. Dkt. 23 at 14-17. The ALJ found that Jones' medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his claims concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Dkt. 23 at 17. Social Security Regulation 96-7p ("SSR 96-7p") recognizes that "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone" and sets forth various factors that an ALJ "must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements."[6],[7] Because the ALJ is in the best position to determine a claimant's truthfulness and forthrightness, a reviewing court "will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-311 (7th Cir. 2012) (citation omitted). To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (internal

---

[6] The factors are: (1) daily activities; (2) location, duration, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or symptoms; (5) treatment, other than medication, received for relief of pain or symptoms; (6) measures other than treatment individual uses to relieve pain or symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or symptoms. SSR 96-7p.

[7] On March 28, 2016 SSR 16-3p became effective to issue new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated under Titles II and XVI. 2016 WL 1267945. Under SSR 16-3p, an ALJ now assesses a claimant's symptoms rather than assessing his "credibility." However, SSR 96-7p governed the ALJ's credibility analysis in Jones' case and is applicable on review.

quotations omitted). The task of the reviewing court is to "merely examine whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Jones makes the vague assertion that the "ALJ never actually explained how the standard was applied to the facts and circumstances of this case." Dkt. 24 at 23. Much like the section relating to the Listings, Jones makes no effort to provide any context to this conclusory allegation nor does he cite any evidence that the ALJ failed to consider in making his credibility determination. *See* dkt. 24 at 22-26. For instance, Jones states that "[t]he decision further omits any articulation of its consideration of what life situations or demands on Jones constitute physical or emotional stressors that work to aggravate his disorders. The ALJ does not discuss what medications Jones is on, only that he believed there was drug-seeking behavior." Dkt. 24 at 25. But Jones does not even cite to the alleged stressors or medication that he claims affected him and were not considered by the ALJ, much less try to establish that failure to consider them was a "patently wrong" decision.

Regardless, the ALJ in this case did cite to the factors enumerated in SSR 96-7p throughout the decision. The ALJ explained several factors in his assessment of Jones' subjective symptoms, including his allegations of mental and physical limitations; the inconsistency of his allegations with the objective medical evidence, the inconsistency of Jones' testimony with his own statements; his ability to work after the onset date; his treatment history and alleged drug-seeking behavior; his activities of daily living; and the medical opinions of record. Dkt. 23 at 16-23. The fact that Jones disagrees with the ALJ's analysis of these factors is not determinative of whether the ALJ's decision on his

11

credibility was patently wrong. See *Shideler* 688 F.3d at 310-311. The Court finds that the ALJ's decision is both reasoned and supported in light of the testimony and evidence of record. See *Elder*, 529 F.3d at 413.

## IV. **CONCLUSION**

For the reasons stated herein, the Court concludes that Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, did not err in her decision to deny Plaintiff Richard E. Jones' application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416, 423, & 1382c(a)(3). Accordingly, this Court **AFFIRMS** the Commissioner's decision. The Court will enter judgment accordingly.

IT IS SO ORDERED.

Date: 9/26/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

12